7860

### LaFITTE v. McNEEL MARBLE CO.

1. CONTINUANCE.—No abuse of discretion appears here in refusing to continue a cause because the intervenor was sick, his evidence at a former trial having been admitted.

2. EVIDENCE—PRINCIPAL AND AGENT.—The issue being whether a domestic concern was a branch of a foreign corporation, declarations of the manager of the domestic concern as to the relation between

the two companies, and the evidence of other officers as to what was done with the money of the domestic concern and as to the acts of the foreign corporation are competent.

3. Ibid.—After attachment of property of foreign corporation, what was done by an intervenor claiming to be an independent concern and the debtor, but alleged to be a branch of the foreign corporation, in forming a domestic corporation, is irrelevant.

4. Portion of charge here complained of construed to be a hypothetical statement of facts and not a charge on the facts.

5. Estoppel.—Request to charge as to estoppel properly refused because it contained a statement that estoppel must fail, if the company who really owes him stands ready and willing and able to have a full and just settlement.

Before Gage, J., Aiken, October, 1909.    Affirmed.

Action by C. B. LaFitte against the McNeel Marble Co., R. W. Dodgen *et al.*, intervenors. The intervenors appealed on the following exceptions:

I. "Because his Honor the presiding Judge committed an abuse of discretion by refusing to continue the trial of this cause on the ground that R. W. Dodgen, the most material witness, was too sick to attend Court, which was proven by the affidavit of a physician, and in forcing said cause to trial in his absence, for the reason that the said R. W. Dodgen was the only witness summoned to attend the trial, and by refusing to continue the same, the intervenors were forced to go to trial without the presence of a single witness, which appellants affirm was especially detrimental to the cause, and, in fact, had its effect upon the jury.

II. "Because the Court erred in allowing the witness, C. B. LaFitte, to answer this question: 'Q. When you were at Bamberg trying to get that order for the marble company, what statements, if any, did you hear Dodgen making, and to whom, about the connection between the Marietta house and the house you were working with?' because any verbal statements were incompetent for the reason that

the relation of principal and agent cannot be shown by declarations of an agent, and he should have so held.

III. "Because the Court erred in refusing to allow the witness, R. W. Dodgen, to testify that the McNeel Marble Company, a copartnership, was changed to the Southern Marble and Granite Company, a corporation under the laws of this State, after July 1st, 1907, the date of the attachment of the money herein; because the evidence of the existence of the copartnership up to the time of the change into a corporation, though it extended beyond the date of the attachment, was competent testimony to go to the jury along with the other facts as bearing on the issue as to who the money attached belonged to, and his Honor should have permitted any evidence on this point to be introduced, though it was subsequent to the date of the attachment.

IV. "Because the Court erred in ruling out a receipt offered by the intervenors, which was passed between the corporation company and the partnership company in connection with their interest subsequent to July 1st, 1907, because said receipt tended to show the relation that had always been existing between the two companies, and should accordingly have been submitted to the jury along with the other facts as bearing on the issue.

V. "Because the Court erred in ruling out of evidence the introduction of a form of a blank contract usually entered into between the partnership company and its salesmen, for the reason that such blank contract form was different from the blank contract form used by the corporation company with its salesmen, and, as it was a part of its ordinary business papers, should have been submitted to the jury along with the other evidence, and he erred in refusing to allow the same to be introduced.

VI. "Because the Court erred in ruling out all testimony bearing on the issue subsequent to the date of the attachment in July 1st, 1907, whereas he should have allowed any

and all evidence on the part of the copartnership company to have gone to the jury along with the other facts.

VII. "Because the Court erred in allowing the witness, M. A. Moore, to answer the following question over the objection of the intervenors: 'Q. When the money came in from Spartanburg, did you put it in the corporation coffers, or divide it up between the fellows?' Whereas, he should have ruled out such testimony on the ground that any acts and conduct on the part of the Mariettta corporation was separate and distinct from the acts of the partnership company, and, therefore, the conduct of the former company could not be binding on the intervenors.

VIII. "Because the presiding Judge erred in ruling that it was competent for C. B. LaFitte to offer in evidence, over the objection of the intervenors, the acts and doings of the Marietta corporation, of Georgia; whereas, he should have held the same incompetent and refused to allow the introduction thereof; because the acts and doings of the Marietta corporation, the Georgia company, were not binding on the Spartanburg copartnership company.

IX. "Because the presiding Judge violated section 26 of article V of the Constitution of the State of South Carolina of 1895 prohibiting a charge on the facts, when he instructed the jury as follows: 'If Dodgen made to LaFitte admissions, or did acts which led LaFitte to believe that LaFitte was dealing with the Georgia corporation, which had many places of business, one at Spartanburg and other places.' For it is respectfully submitted that he invaded the province of the jury in stating the facts that the Georgia corporation 'had many places of business, one at Spartanburg and other places,' for it was a direct inference, and indicated to the jury that it was the opinion of the Court that the Spartanburg company was one of the branch offices of the Georgia corporation, which was the issue before the jury. He should not have stated that the Marietta corporation, of Georgia, had 'one (place of business) at Spartan-

burg and other places,' because it led the jury to believe that the Spartanburg company was a part of the Marietta company, since there was no other business of that nature at Spartanburg except the copartnership company.

X. "Because the presiding Judge violated section 26 of article V of the Constitution of the State of South Carolina of 1895 when he charged the jury as follows: 'Then Dodgen cannot now deny his former acts and admissions,' for it is respectfully submitted that such charge indicated to the jury that Dodgen had committed acts and made admissions; whereas, such was not admitted by him, and, therefore. it was misleading, and did in fact mislead the jury into believing that Dodgen had made admissions and committed former acts which should not now be denied.

XI. "Because his Honor the presiding Judge violated section 26 of article V of the Constitution of the State of South Carolina of 1895, in charging the second request of the respondent, C. B. LaFitte, which is as follows: 'Even if the jury find that there was a partnership existing in Spartanburg called the McNeel Marble Company, still, if they further find that such copartnership in placing the Vincent, Seigler jobs, acted as agents of the McNeel Marble Company, a Georgia corporation, then the verdict must be "No," for a copartnership can act as agent.' For it is respectfully submitted that this request invaded the province of the jury, and inferred for them, in using the language, 'in placing the Vincent, Seigler jobs,' that such company had in fact made these transactions, whereas it is in dispute whether the Georgia corporation or the South Carolina copartnership placed the Vincent, Seigler jobs. His Honor should not have made any statement on the facts whether the Vincent, Seigler jobs were placed or not.

XII. "Because his Honor the presiding Judge erred in refusing to charge the jury the fifth request of the intervenors, which is as follows: 'Before any person can rely upon the plea of estoppel, it is incumbent on him to show

by the preponderance of the evidence that the acts and con-
duct of the party they seek to estop were not only such as to
mislead him, but that they were in fact mislead to their
prejudice and injury. Hence, if you find from the evidence
in this issue that, notwithstanding the fact that C. B.
LaFitte might have been misled as to who he was
employed by, if he was, yet, if the company who really owes
him stands ready and willing and able to have a full and
just settlement, and he has not been mislead so as to injure
his rights, then the plea of estoppel must fail.' For it is
submitted that the same is a sound proposition of law, and
he should have so instructed the jury."

*Messrs. Croft & Croft,* for appellant, cite: *Refusal to
continue case was error:* 9 Cyc. 93, 96; 29 S. W. 218; 43
S. C. 205. *Declarations of Dodgen incompetent:* 58 S. C.
210. *Acts of McNeel partnership improperly admitted:*
10 Cyc. 117-8. *Error to rule out blank contract and letter-
heads:* 53 S. C. 360. *And to allow in evidence what was
done with appellant's money:* 37 S. C. 605. *Charge on
facts:* 51 S. C. 534. *Estoppel in pais:* 57 S. C. 507; 42 S. C.
348; 16 Cyc. 744-5.

*Messrs. Hendersons,* contra, cite: *Admitted facts may be
stated in charge:* 69 S. C. 1. *Charging requests:* 45 S.
C. 215; 78 S. C. 387; 51 S. C. 120.

April 17, 1911. The opinion of the Court was deliv-
ered by

Mr. Chief Justice Jones. The plaintiff, a citizen of
this State, on July 1st, 1907, sued the McNeel Marble
Company, a corporation of the State of Georgia, to recover
$1,041.54 upon a contract for services, and on same day
attached a debt of $1,136.41 due by Mary E. Seigler to the
McNeel Marble Company and a debt of $112.50 due by
H. E. Vincent to said company. The sheriff collected these

debts and held the money subject to the attachment. The McNeel Marble Company having failed to appear or answer, on proof of claim by plaintiff, judgment by default was entered against it on October 7, 1907.

The appellants, R. W. Dodgen, R. M. McNeel, M. L. McNeel and E. B. Fryor, as a partnership doing business at Spartanburg, S. C., under the name of the McNeel Marble Company, on July 8, 1907, intervened in the above action, claiming that they were owners of the debts and money collected thereon by the sheriff, and not the Georgia corporation. The following issues were framed and sent to the jury at the Fall term, 1909.

"At the time of the levy of the writ of attachment in the above stated case was the McNeel Marble Company, which have intervened, the owners of the property claimed in the petition?"

Upon the trial of this issue the jury answered, "No," and accordingly order was made applying the money to the judgment in favor of plaintiff against the Georgia corporation and holding balance in sheriff's hands subject to the order of the Court.

The intervenors appeal upon exceptions to the refusal of motion to continue, to the rulings as to admissibility of testimony, and to the charge to the jury.

Exception 1. Motion for continuance was made on the ground of the absence of Dodgen upon an affidavit from attending physician that he was quite sick and could not be present at the trial. The Court held that proper showing had not been made and ordered the case to trial, providing, however, that the testimony of Dodgen, as given on a former trial of this issue, should be put in evidence, and the Court actually excused the stenographer to go to Barnwell for his notes of the testimony, and the testimony was read. Motions for continuance, as has been often declared, are addressed to the discretion of the trial Court, and this Court will not interfere, except

in a clear case of abuse of discretion, which has not been shown in this case.

Exception 2. Contention is made that the witness, C. B. LaFitte, ought not to have been allowed to answer the question: "When you were at Bamberg trying to get that order for the marble company, what statement, if any, did you hear Dodgen making and to whom, about the connection between the Marietta house and the house you were working with?" on the ground that the relation of principal and agent cannot be shown by the declarations of an agent. The testimony was competent, as the declaration of Dodgen, a party, as to the relation of the Georgia corporation to the Spartanburg concern of the same name of which he was manager, the intervenors claiming that the two companies were separate and distinct and the plaintiff claiming that the Spartanburg concern was a mere branch of the Georgia corporation.

Exceptions 3, 4 and 6. The rulings complained of in these exceptions were correct, as it was not relevant to the issues to show what took place between the Spartanburg company and the Southern Marble and Granite Company, especially after the date of the attachment herein.

Exception 5. It would not have been error to exclude from evidence a form of a blank contract usually entered into between the Spartanburg company and its salesman, it appearing that plaintiff had made no such contract with the Spartanburg company. It appears, however, from the case, at folio 339, that the form of contract used by the Spartanburg company was admitted in evidence.

Exception 7. It was proper to allow the witness, Moore, to answer the question: "When the money came in from Spartanburg did you put it in the corporation coffers or divide it up between the fellows?" The witness, who was in the employ of the Georgia corporation as bookkeeper, answered: "We put it in the corpora-

tion coffers," and he further stated that it was not put to the credit of R. M. and M. L. McNeel and E. B. Fryor. The purpose of the testimony was to show that the Spartanburg business was a branch or part of the business of the Georgia corporation and not a separate and distinct business.

Exception 8. For the same purpose it was also competent to permit the witness LaFitte to testify as to the acts of the Georgia corporation.

Exception 9. It is contended that the following was a charge in respect to matters of fact in violation of the Constitution:

"If Dodgen made to LaFitte admission, or did acts which led LaFitte to believe that he, LaFitte, was dealing with the Georgia corporation, which had many places of business, one at Spartanburg and other places." It is claimed that this involved a statement that the Georgia corporation had a place of business at Spartanburg, a matter in issue. We do not so construe the charge. The clause beginning "which had" is associated with the preceding word "if," and was intended as a hypothetical statement and not as a positive statement. The whole charge shows very clearly that this issue was left exclusively with the jury, without any intimation of the Court's opinion on the subject.

Exception 11, exception 10 being abandoned. It is alleged that the Court charged as to the facts in the following instruction: "Even if the jury find that there was a partnership existing in Spartanburg called the McNeel Company, still, if they further find that such copartnership in placing the Vincent, Seigler jobs, acted as agent of the McNeel Marble Company, a Georgia corporation, then the verdict must be 'No,' for a partnership can act as agent." The point made is that the language "in placing the Vincent, Seigler jobs" is a statement of fact in issue, it being

a matter of dispute whether these jobs were placed by the Georgia corporation or the Spartanburg company. We think the statement fairly within the rule permitting a statement of fact hypothetically. Moreover, if it could be construed as a positive statement that the Spartanburg company placed these jobs it was favorable, rather than prejudicial, to appellant.

Exception 12. It is finally contended that the Court erred in refusing to charge the fifth request of appellant, as follows: "Before any person can rely upon the plea of estoppel, it is encumbent on him to show by the preponderance of the evidence that the acts and conduct of the party they seek to estop were not only such as to mislead him, but that they were in fact misled to their prejudice and injury. Hence, if you find from the evidence in this issue that, notwithstanding the fact that C. B. LaFitte might have been misled as to who he was employed by, if he was, yet, if the company who really owes him stands ready and willing and able to have a full and just settlement, and he has not been misled so as to injure his rights, then the plea of estoppel must fail."

The Court in the general charge and in response to other requests to charge, very fully and clearly stated the law as to estoppel. The instruction requested above was faulty in the latter part in stating that the plea of estoppel must fail "if the company who really owes him stands ready and willing to have a full and just settlement." There was no testimony that the Spartanburg company were ready and willing to pay the plaintiff's claim as established against the Georgia corporation. The testimony for the Spartanburg company was that they owed plaintiff between $200 and $250 and were ready and willing to settle. If there had been testimony that the Spartanburg company were ready and willing to pay plaintiff's claim, that would not prevent plaintiff from holding to his right to the fund in Court, if

he could establish that the fund belonged to the Georgia corporation against which he had obtained judgment.

The judgment of the Circuit Court is affirmed.